IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CEDRIC RODRIQUEZ TONKINS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-20-2679 |
| STEPHEN MOYER, et al., | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Plaintiff Cedric Rodriquez Tonkins filed this civil rights complaint on September 16, 2020, alleging that Defendants failed to protect him from an attack by other inmates. ECF No. 1. He supplemented his complaint on November 17, 2020. ECF No. 9. Following this court's order to file an amended complaint (ECF No. 18), Plaintiff filed amended complaints on February 21, 2021 (ECF No. 22) and March 4, 2021 (ECF No. 24). The two amended complaints are substantially the same; the second appears to be a type-written version of the first, with few substantive differences. As Mr. Tonkins was advised, an amended complaint replaces the original complaint. ECF No. 18 at 3. "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000). Therefore, the court will consider the most recent amended complaint (ECF No. 24) as operative.

On March 22, 2021, Defendants Stephen T. Moyer, J. Philip Morgan, and Duval Jones filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 27. Mr. Tonkins filed a response (ECF No. 29) and supplemental response (ECF No. 30) in opposition to the motion. The court finds no need for a hearing. *See* Local Rule 105.6 (D. Md. 2021). For the

reasons that follow, Defendants' motion will be DENIED. Mr. Tonkins' motion to appoint counsel (ECF No. 33) shall be GRANTED.

## I.   BACKGROUND

### A.   Plaintiff's Claims

Mr. Tonkins is an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Service ("DPSCS"). On August 19, 2019, he was housed at the Maryland Correctional Institute – Jessup ("MCI-J"). ECF No. 24 at 3; ECF No. 27-1. Mr. Tonkins alleges that, on that date, he was in his cell when an unidentified person tampered with the lock, entered the cell, and stabbed him multiple times. ECF No. 29 at 2. Mr. Tonkins, seriously injured, was taken to the hospital by ambulance and admitted for treatment. ECF No. 24 at 3.

Mr. Tonkins claims that Defendants failed to protect him from attack.[1] ECF No. 24. Specifically, he alleges that two unknown officers who were tasked with supervising his tier on August 19, 2019, abandoned their posts thereby giving his assailants opportunity to attack him.[2] *Id*. at 3-4. He claims that that these officers were aware of recent violence on the tier and the danger he personally faced. *Id*. Mr. Tonkins further claims that defendants Mr. Moyer, whom he identifies as "Secretary of Operations," and Mr. Morgan, Warden of MCI-J, knew of ongoing

---

[1] Mr. Tonkins does not make any claims regarding his medical care. Furthermore, the fact that he was stabbed and severely injured does not appear to be in dispute. Nevertheless, defendants have unnecessarily placed in the public record 76 pages of Mr. Tonkins' otherwise private medical records. ECF No. 27-3.

[2] Notwithstanding the court's instructions to provide names or other details in order to identify and serve these defendants (ECF No. 18), Mr. Tonkins did not provide additional information. Nonetheless, he did state that these defendants were a female CO II known as "Double R" who was on duty at the time of the assault and her supervisor, a male sergeant. ECF No. 24 at 3. Service was not accepted on behalf of these Defendants. However, documents submitted by counsel indicate that a CO II named Debroah Ried-Rawlings found Mr. Tonkins after he had been stabbed. ECF No. 27-2 at 3 and 14. If Debroah Ried-Rawlings is the "Double R" Mr. Tonkins names, her supervisor should not be difficult to ascertain.

violence, specifically with regard to inmates fashioning weapons from metal pieces of faulty or broken equipment, and failed to take action to mitigate the known danger. *Id*. at 4-5. Finally, Mr. Tonkins alleges that he informed defendant Mr. Jones of his concerns for his safety and desire to be moved off the tier in the days before he was stabbed, but Mr. Jones did not act on that information. *Id.* at 6.

**B.     Defendants' Response**

Defendants responded with a motion to dismiss, or in the alternative, for summary judgment. ECF No. 27. Accompanying the motion is a memorandum in support and several exhibits. ECF Nos. 27-1 – 27-9. While Defendants' arguments rely heavily on evidence outside the four corners of the complaint, they fail to apply the summary judgment standard and ask this court to dismiss the complaint without a proper basis in law. As Defendants recognize, "the Court must dismiss Plaintiff's complaint if it does not 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible ***on its face***.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)" ECF No. 27-1 at 5 (emphasis added). Notwithstanding this fundamental tenet of civil procedure, Defendants use numerous exhibits to demonstrate their position that the complaint should be dismissed. *See, e.g.*, ECF No. 27-1 at 12-13 (arguing that because their evidence shows that "efforts were in fact undertaken to prevent the exact harm that Plaintiff claims to have suffered . . . Plaintiff has failed to state a claim upon which relief can be granted."). Defendants did not argue for summary judgment, and in fact, conflated their motions for dismissal and summary judgment rather than arguing in the alternative. The court will not engage in an independent analysis to determine on what basis Defendants are moving for each. Therefore, the court declines to construe the motion as one for summary judgment and will consider it as a motion to dismiss.

## II. STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As explained above, the court declines to exercise this discretion and will not consider evidence outside of the pleadings.

In reviewing the motions to dismiss, the court accepts the well-pleaded allegations as true and in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

### III.   ANALYSIS

**A.   Exhaustion of Administrative Remedies**

Defendants argue that Mr. Tonkins' amended complaint should be dismissed because he failed to exhaust his administrative remedies. ECF No. 27-1 at 8. The Prison Litigation Reform Act ("PLRA") provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

6

The Maryland DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for

7

management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[3]  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

---

[3] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust

where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Here, Mr. Tonkins alleges that he filed ARPs and appealed them to the IGO. ECF No. 24 at 2. Defendants do not dispute this fact. Instead, Defendants argue that the remedies are unexhausted because Mr. Tonkins did not pursue his claims in state circuit court following the denial of the claims by the IGO.[4] ECF No. 27-1 at 10. However, Defendants are mistaken that administrative exhaustion requires filing a lawsuit in state court. While inmates *may* seek judicial review in state court following administrative proceedings, judicial review in state court is not necessary to satisfy the PLRA's administrative exhaustion requirement. *Pozo*, 286 F.3d 1022, 1024 (7th Cir. 2002). Therefore, as all parties agree that Mr. Tonkins filed ARPs and appealed them to the IGO, Defendants' argument that Mr. Tonkins has not exhausted his administrative remedies is without merit.

**B.    Eleventh Amendment Immunity**

Defendants next argue that Mr. Tonkins' claims are subject to dismissal because defendants are immune from suit under the Eleventh Amendment. ECF No. 27-1 at 10. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst*

---

[4] In asking the court to dismiss the complaint for failure to exhaust his administrative remedies, Defendants include an exhibit of a Maryland Judiciary Case Search showing that Mr. Tonkins has not filed a case in state court. ECF No. 27-7. As the court is not considering Defendants' motion for summary judgment, this exhibit will not be considered. Nevertheless, the exhibit is not relevant to an accurate analysis of the law.

*State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. Accordingly, Defendants are immune from suit for actions taken in their official capacity.

Mr. Tonkins' complaint does not specify whether he intends to sue Defendants individually or in their official capacities. As a self-represented plaintiff, his complaint is liberally construed. It is therefore reasonable to infer that Mr. Tonkins intends to sue Defendants in both their individual and official capacities. Defendants are correct that when sued in their official capacities, they are immune under the Eleventh Amendment. The claims against them in their official capacities will be dismissed. However, Defendants are not immune in their individual capacity under the Eleventh Amendment and claims against them as individuals cannot be dismissed on that basis.

C.     **Failure to Protect**

The crux of Mr. Tonkins' complaint is that Defendants failed to protect him from assault by another inmate. Defendants contend that he has failed to state such a claim and move to dismiss.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Mr. Tonkins must allege facts sufficient to establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply

11

not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Mr. Tonkins' complaint meets the objective inquiry by claiming that he "was stabbed over six times; three in the head, and two in the chest and arm area" resulting in his admission to the hospital for three days. ECF No. 24 at 3. These claims clearly represent "a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." *Danser*, 772 F.3d at 346-47. As to whether Mr. Tonkins has sufficiently alleged that Defendants had knowledge of any substantial risk of serious harm and were deliberately indifferent to it, the court will address each Defendant in turn.

1. **Unnamed Defendants**

Mr. Tonkins alleges that two unnamed defendants, a female CO II nick-named "Double R" and her supervisor, a male sergeant, left their posts on his tier and/or failed to ensure that someone was guarding the tier. ECF No. 24 at 3-4. Mr. Tonkins contends that these officers knew he was in danger if left unattended, because there had been recent gang violence, including stabbings, in his housing unit. *Id*. at 3. In fact, Mr. Tonkins alleges that the uptick in violence was so significant that a meeting, attended by the unnamed defendants, was held to address the problem. *Id*. Mr.

Tonkins alleges that notwithstanding their knowledge of recent and severe violence on the tier, the unnamed defendants left it unattended. *Id*. He alleges that no guard was present on the tier when he was stabbed. *Id*.

Mr. Tonkins' claims that these defendants had actual knowledge of a specific risk of harm – frequent, recent, and serious gang violence on the tier – and that they were deliberately indifferent to that risk by leaving the tier unattended. Of course, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Nevertheless, a prison official cannot escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault . . . it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attach for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843 (quoting, *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). By alleging they had the requisite knowledge of danger and were deliberately indifferent to it, Mr. Tonkins has stated a claim of failure to protect as to these unnamed defendants.

   **2.   Defendants Mr. Moyer and Mr. Morgan**

Mr. Tonkins alleges that Mr. Moyer and Mr. Morgan knew of the increased violence at the prison and declined to take preventative measures such as installing security cameras and restricting inmates' ability to make homemade weapons and tamper with locks. ECF No. 24 at 5-6. As to Mr. Moyer, Mr. Tonkins does not make any allegation as to how he knew this information, other than that he was the "Secretary of Operations." *Id.* at 5. Therefore, Mr. Tonkins failed to allege that Mr. Moyer had the requisite knowledge to establish a claim of failure to protect. The

claims against Mr. Moyer will be dismissed. As to Mr. Morgan, Warden of MCI-J, Mr. Tonkins specifically alleges that the intel unit notified him in June of 2019 that there had been an increase in assaults using homemade weapons. *Id*. at 4. In addition, he alleges that the prison has a long, documented history of inmates tampering with locks. *Id*. at 5. Mr. Tonkins alleges that Mr. Morgan was responsible for the security of the facility, knew of increasing and serious violence facilitated by equipment in disrepair, and failed to take action to mitigate the known risk of harm. General assertions of safety issues within a prison may be insufficient to support a claim of failure to protect, *Toomer v. Baltimore City Detention Center*, 2014 WL 467812, *5 (D.Md. 2014), and prison officials "may be found free from liability if they responded reasonably to the risk, even if harm was not averted." *Farmer*, 511 U.S. at 844. Mr. Tonkins, however, alleges that Mr. Morgan knew about these ongoing and increasing safety issues and did nothing. Therefore, he has stated a claim against Mr. Morgan for failure to protect.

### 3. Defendant Duval Jones

Mr. Tonkins claims that he told Mr. Jones just one or two days prior to the violent assault on him that he was in danger and wanted to be moved out of his housing unit. Mr. Tonkins alleges that:

> on or about August the 17th or 18th of 2019 Tonkin's did pass on information to an Intel officer name Duvall Jones a COII at MCI-J. About a incident that took place in the same housing unit section that Tonkins was housed in concerning four (4) gang members Blood and (BGF) members fighting and stabbing each other days before the incident took place. That one blood member had thrown a homemade weapon on the top tire were I was standing in front of my cell C/E 249. [sic]

ECF No. 24 at 6. Mr. Tonkins says that he asked Mr. Jones to inform the Warden of this incident, that he was in fear for his safety because of what he had seen, and that he wanted to be moved out of his tier for his own protection. *Id*. He alleges that Mr. Jones failed to act on this information

15

with deliberate indifference to the risk of substantial harm. *Id*. Accordingly, Mr. Tonkins has sufficiently alleged a claim against Mr. Jones for failure to protect him from a known risk of harm.

## IV. CONCLUSION

Defendants' motion to dismiss will be granted as to Defendant Moyer and as to all Defendants in their official capacities. The motion will be otherwise denied, and all remaining claims against Defendants Morgan, Jones, and the unnamed Defendants will proceed. Counsel for Defendants will be directed to identify the unnamed defendants, if possible, for purposes of service. Mr. Tonkins' motion to appoint counsel will be granted. A separate order follows.

January 28, 2022                                   /s/
                                                   DEBORAH K. CHASANOW
                                                   United States District Judge